1    JASON B. CRUZ (CA SBN: 203133)
     The Law Office of Jason B. Cruz
2    18 E. State Street, Suite 203-1
     Redlands, California 92373
3    Telephone: (909) 792-4400
     Facsimile: (909) 792-1144
4    Email: jcruz@jcruzlaw.com

5    JOHN D. COX (Admitted in KY)
     Lynch, Cox, Gilman & Goodman
6    500 W. Jefferson Street, Suite 2100
     Louisville, Kentucky 40202
7    Telephone: (502) 589-4215
     Facsimile: (502) 589-4994
8    Email: jcox@lynchcox.com

9    Attorneys for Defendants and Counter Claimants
     Dark Hall Productions, LLC and Matthew Arnold

12             UNITED STATES DISTRICT COURT

13      CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| YOON CHUL YOO, et al. | CASE NO.:  CV09-7483 MMM (CWx) |
|          Plaintiff, | **NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT; AND PROPOSED ORDER** |
|     v. | |
| MATTHEW ARNOLD, et al. | |
|          Defendants. | |
| MATTHEW ARNOLD, et al. | Judge:  Margaret M. Morrow |
|          Counter-Plaintiff, | Magistrate:  Carla Woehrle |
|     v. | |
| YOON CHUL YOO, et al. | Hearing |
|          Counter-Defendants. | Date:   February 13, 2012<br>Time:  10:00 a.m.<br>Court: Roybal Federal Bldg.<br>Room: 780<br>Judge:  Margaret M. Morrow |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Please take notice that on February 13, 2012 or as soon thereafter as the matter may be heard in the courtroom of the Honorable Margaret Morrow, located at the Roybal Federal Bldg., 255 East Temple St., Room 780, Los Angeles, California 90012, Defendants and Counter-Plaintiffs Matthew Arnold ("**Mr. Arnold**")  and Dark Hall Productions, LLC  ("**Dark Hall**") will move the above titled Court for Entry of Judgment by Default against Plaintiff and Counter-Defendant, Yoon Chul Yoo, on behalf of himself and similarly situated investors (collectively herein " **Mr. Yoo**") on their claims for fraud, conversion, breach of contract, promissory estoppel and unjust enrichment on the grounds that Mr. Yoo has failed to answer the Counter-Claim.

 Mr. Yoo's Answer to the Counter-Claim of Mr. Arnold and Dark Hall having been stricken pursuant to this Court's Orders, dated October 28, 2011, (Docket No. 95) Mr. Arnold and Dark Hall now seek to have a default judgment entered against Mr. Yoo.  This Motion is made generally upon the following grounds, as set forth more fully in the supporting papers filed and served with this Notice of Motion and Motion:

1.      On October 15, 2009, Mr. Yoo, commenced this action against Mr. Arnold and Dark Hall alleging causes of action for breach of contract, conversion, negligence and abuse of process.  (Complaint, Docket No. 1).  On October 29, 2009, Mr. Arnold and Dark Hall filed an Answer that included counterclaims against Mr. Yoo for fraud, conversion, breach of oral contract, promissory estoppel, breach of contract and unjust enrichment. (Counter-Claim, Docket No. 5).   This Court granted a Motion to Strike Counter-Defendants' Answer to the counterclaim on October 28, 2011.

2.      In this Court's Civil Minute Order denying Defendants' Motion for Leave to File Motion for Summary Judgment, dated July 20, 2011, Document No. 92, the Court stated, "Given the procedural posture of this matter, the Court believes that it would be expeditious if Defendants were to file a motion to strike Mr. Yoo's Answer to the

Counter-Claims for failure to make a discovery and failure to follow court orders. Thereafter, if the motion is granted, Defendants can seek entry of Yoo's default and file a motion for default judgment."

3.      The Order granting the Motion to Strike stated, "[I]n light of the arguments made by the defendants in the motion, Yoo's failure to oppose the motion, and Yoo's continued refusal to participate in discovery, the Court grants the motion"  and further directed the Clerk to strike Yoo's Answer and enter his default on the counterclaim.

4.      Defendants are neither infants nor incompetent and Defendants are not in military service such that the Soldiers' and Sailors' Civil Relief Act of 1940 would apply.

5.      Defendants assert that Mr. Yoo has committed fraud, and conversion, and that he has breached the terms of contracts to which he was bound and has been unjustly enriched thereby, thus causing damages to Mr. Arnold and Dark Hall.

This Motion will be based on this Notice, the attached Memorandum of Points and Authorities, the pleadings and filings of record, the Affidavit of Matthew Arnold (attached), and other documents filed in this action, the matters of which Mr. Arnold and Dark Hall request the Court take judicial notice and upon such further evidence and argument as may be offered in support of the Motion.

DATED: November 22, 2011                    Respectfully submitted,


                                            */s/ John D. Cox*
                                            John D. Cox (*pro hac vice* admission)
                                            LYNCH, COX, GILMAN & GOODMAN, P.S.C.
                                                      and
                                            Jason B. Cruz,
                                            LAW OFFICES OF JASON B. CRUZ
                                            *Attorneys for Defendants and Counter-*
                                            *Claimants Dark Hall Productions, LLC and*
                                            *Matthew Arnold*

# TABLE OF CONTENTS

Page

I. INTRODUCTION…………………………………………..…….………………2

II. PROCEDURAL HISTORY……………………………………..……………....2

II. FACTUAL BACKGROUND……………………………………........................3

IV. ARGUMENT………………..……………………………………………….8

   **A. Matthew Arnold and Dark Hall Productions, LLC are entitled to Default Judgment pursuant to Fed. R. Civ. P. 55**
………………………………………………………………8

   1. Substantive Merits and Sufficiency of Complaint…………………………10

      a. Fraud…………………………………………………………10

      b. Conversion…………………………………………………………11

      c. Breach of Contract…………………………………………………11

      d. Unjust Enrichment…………………………………………………13

   2. Amount at stake…………………………………………………………13

   3. Possibility of Prejudice………………………………………………...15

   4. Possibility of Dispute……………………………………………………15

   5. Possibility of Excusable Neglect………………………………………....16

   6. Policy of Deciding on the Merits………………………………………16

V. CONCLUSION…………………………………………………………………..16

# TABLE OF AUTHORITIES

PAGE

**Federal Laws and Statutes**

Federal Rule of Civil Procedure 55…………..…….…….……………………8, 9, 16

Federal Rule of Civil Procedure 41(b)…………………………………………..3

**Federal Cases**

*PepsiCo, Inc. v. California Security Cans,*
238 Fed.Supp.2d 1172, 1174 (2002)………………………………..…9, 15, 16

*Kloepping v. Fireman's Fund,*
1996 WL 75314, at *2 (N.D.Cal. Fed 13, 1996)…………………………9, 10, 16

*Draper v. Coombs,*
792 F.2d 915, 924-25 (9th Cir. 1986)…………………………………………..9

*Parker West International, LLC v. Clean Up America, Inc.,*
2009 WL 2916664 9N.D. Cal.Sept. 1, 2009)……………………………………9

*Dr. JKL Ltd. v. HPC IT Education Center,*
749 F.Supp.2d 1038 (N.D.Cal 2010)…………………………………………...9

*Eitel v. McCool,*
782 F.2d 1470 (9th Cir. 1986)…………………………………...10, 13, 14, 15

*Danning v. Lavine,*
572 F.2d1386, 1388 (9thCir. 1978)…………………………………………10

*Small v. Fritz Company, Inc.,*
30 Cal. 4th 167, 173 (2003)…………………………………………….....10

*Baldwin v. Morena City Property, Inc.,*
79 Cal.App.3d 393, 410 (1978)……………………………………………..11

*First Commercial Mortgage Co. v. Reece,*
89 Cal. App. 4th 731, 745 (2001)…………………………………………11

*Careau & Co. v. Security Pacific Business Credit, Inc.,*
222 Cal. 3d 1371, 1388 (1990)…………………………………………...11

*LectroDryer v. Seoul Bank,*
77 Cal.App.4th 723, 726 (2000)……………………………………………..13

*Electrical Electronic Control, Inc. v. Los Angeles United School Dist.,*
24 Cal. Rptr.3d 316, 327 (2005)……………………………………………..15

1

2   *Prentice v. North Amer. Title Guar. Corp.,*
        (1963) 59 Cal.2d 618, 620 30 Cal. Rptr. 821, 381 P.2d 645……………………………..15

3

    *TeleVideo Systems, Inc. v. Heidenthal,*
4        826 F.2d 915, 917-18 (9th Cir. 1987)……………………………………………………..15

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   JASON B. CRUZ (CA SBN: 203133)
    The Law Office of Jason B. Cruz
2   18 E. State Street, Suite 203-1
    Redlands, California 92373
3   Telephone: (909) 792-4400
    Facsimile: (909) 792-1144
4   Email: jcruz@jcruzlaw.com

5   JOHN D. COX (Admitted in KY)
    Lynch, Cox, Gilman & Goodman
6   500 W. Jefferson Street, Suite 2100
    Louisville, Kentucky 40202
7   Telephone: (502) 589-4215
    Facsimile: (502) 589-4994
8   Email: jcox@lynchcox.com

9
    Attorneys for Defendants and Counter-Claimants
10  Dark Hall Productions, LLC and Matthew Arnold

11

12

13                 UNITED STATES DISTRICT COURT

14      CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

15
    YOON CHUL YOO, et al.            CASE NO.:  CV09-7483 MMM (CWx)
16
                   Plaintiff,        **MEMORANDUM IN SUPPORT OF**
17                                   **MOTION FOR DEFAULT JUDGMENT**
          v.
18
    MATTHEW ARNOLD, et al.
19
                   Defendants.
20

21  MATTHEW ARNOLD, et al.
                                     Judge:      Margaret M. Morrow
22             Counter-Claimant,
                                     Magistrate:   Carla Woehrle
23        v.
                                     Date:   February 13, 2012
24  YOON CHUL YOO, et al.            Time:  10:00 a.m.
                                     Room: 780, Roybal Federal Bldg.
25             Counter-Defendants.

26
          The Counterclaim Plaintiffs, Matthew Arnold ("Mr. Arnold") and Dark Hall Productions,
27
    LLC ("Dark Hall"), by counsel, hereby submit this Memorandum of Law in Support of their
28
                                        1

Motion for Default Judgment against Counterclaim Defendant Yoon Chul Yoo and the similarly situated investors on whose behalf he sued.  (Collectively hereafter "**Mr. Yoo**")

## I.  INTRODUCTION

In making this Motion, Mr. Arnold and Dark Hall are guided by this Court's Order denying their Motion for Leave to File Motion for Summary Judgment (See **Docket No. 93**), in which this Court stated, "Given the procedural posture of this matter, the Court believes it would be more expeditious if defendants were to file a motion to strike Yoo's Answer to the Counter-Claims for failure to make discovery and failure to follow Court orders.  Thereafter, if the motion is granted, Defendants can seek entry of Yoo's default judgment and file a motion for default judgment."

Since filing this lawsuit one hour after Dark Hall obtained a verdict against Sophia Yoo, Mr. Yoo's daughter, in California Superior Court for $3.76 million dollars, Mr. Yoo and the similarly situated investors he claims to represent have been uncooperative and nonresponsive.  Mr. Yoo refused to respond to multiple attempts to obtain discovery from Mr. Yoo.  Not surprisingly, this Court dismissed Mr. Yoo's claims on May 10, 2011.  Therefore, the only claims which remained were the counterclaims brought by Mr. Arnold and Dark Hall against Mr. Yoo.

On October 28, 2011, this Court struck Mr. Yoo's Answer to the counterclaims.  Mr. Arnold and Dark Hall now seek to complete the process outlined in this Court's June 2011 Order and move for Default Judgment against Mr. Yoo and the similarly situated investors.

## II. PROCEDURAL HISTORY

On October 15, 2009, Mr. commenced this action against Mr. Arnold and Dark Hall Productions Yoo on behalf of himself and similarly situated investors.

On October 29, 2009, Mr. Arnold and Dark Hall filed an Answer and Counter-Claim against Mr. Yoo and the similarly situated investors, for fraud, conversion, breach of contract, promissory estoppel, and unjust enrichment.

On August 26, 2010, counsel for Mr. Yoo, Baute & Tidus, LLP (B&T), filed a motion seeking to withdraw as Mr. Yoo's counsel due to Mr. Yoo's failure to communicate with B&T or

pay the firm's fees.  Mr. Yoo did not object to the withdrawal of B&T, and on October 25, 2010, the Court granted B&T's motion.

On November 22, 2010, Mr. Yoo sought leave to substitute Allen Forsley of Freeman, Knupfer, Lieberman, LLP ("FKL") as his counsel.  This request was granted on November 23, 2010.

On March 23, 2011, Mr. Forsley and FKL filed a motion seeking leave to withdraw as counsel for the same reasons previously cited by B&T.  Dark Hall objected to the withdrawal on the grounds that it would effectively put the litigation in limbo once again, and given Mr. Yoo's failure to cooperate with discovery up to that point, a withdrawal of counsel was likely to prejudice Dark Hall.  (See **Docket No. 84**.)

On April 5, 2011, this Court issued a Show Cause Order for Mr. Yoo to appear and assert why the claims he brought should not be dismissed.  (See **Docket No. 85**.)  In this Court's own words, "After almost a year in which Yoo refused to communicate with or pay counsel, and in which two separate law firms attempted to represent him and later filed motions to withdraw, the court issued an order to show cause why it should not dismiss the complaint with prejudice for failure to prosecute the action."  The deadline to show cause was May 2, 2011.  No response was received.

On May 10, 2011, this Court dismissed the claims of Mr. Yoo and the similarly situated investors pursuant to Fed. R. Civ. P. 41(b).  (See **Docket No. 87**.)

On October 28, 2011, this Court granted the Motion to Strike and directed the Clerk of the Court to enter the default of Mr. Yoo on the counterclaims.

## III. FACTUAL BACKGROUND

Mr. Yoo is from the Republic of Korea and has Power of Attorney to represent or is an agent of the investors in a film titled "The Door."  (Complaint ¶5, **Attachment No. 6** to Affidavit of Mathew Arnold, ("**MAA**") attached hereto as **Exhibit A**).  The Complaint he filed in this action was styled "Yoon Chul Yoo, on behalf of himself and similarly situated investors."  Dark Hall is owned and operated by Mr. Arnold (See MAA, ¶ 1).

3

In March of 2007, Mr. Arnold traveled to Seoul, Korea with Sophia Yoo to raise money for a motion picture titled "The Door" which was or would be written, directed and produced by him. (MAA, ¶7-11). By the end of that trip, Mr. Yoo and the other eventual investors had orally agreed to finance the production of the movie by investing $4.5 million in exchange for a share of the films profits. (MAA, ¶11-15).

Thereafter, each of the investors agreed to the investment agreements. (See MAA ¶19 and MAA **Attachment No. 2**.) Pursuant to the terms of the written investment agreement between Mr. Yoo and Dark Hall, Mr. Yoo through his company, Sae Kwang, wired $1,076.078.00 on May 29, 2007 to Dark Hall's account. In addition, the second investor, Boston Entertainment Partner ("Boston Entertainment") wired $532,990.00 and $1,066,660.00 respectively. (A copy of Boston Entertainment's Investment Agreement is found at MAA, **Attachment No. 2**.) The third and final investor, Korean Business News ("KBN") wired $1,072,846.26. The terms of the investment agreement for KBN are identical to that of Boston Entertainment's agreement. A signed copy was never provided, but it was represented by Mr. Yoo and his daughter that it had been signed and received by them. (MAA, ¶19). Copies of the power of attorney and the authorization indicating that Mr. Yoo had the authority to act on behalf of Boston Entertainment and KBN respectively are attached hereto at MAA, **Attachment No. 4**. (Hereinafter, Mr. Yoo/Sae Kwang, Boston Entertainment and KBN, are collectively included in "**the Investors**.")

When the Investors agreed to fund the movie, they agreed the budget would be $4.5 million dollars. In addition, they agreed to Paragraph 8 of each of their investor agreements, which provides:

> Investor shall defend, indemnify, and hold [Dark Hall] its licensees and assigns, and the directors, officers, employees and agents of the foregoing, harmless from third party claims, liabilities, damages, costs and reasonable outside legal fees (collectively, "claims"), arising from any breach by investor of any representation, warranty, or agreement made by investor here under.

(See MAA at **Attachment No. 2**.)

4

In July of 2007, Mr. Arnold began having problems with the Yoos and the Investors. At that point, demands were made by Sophia Yoo indicating that Mr. Yoo, as well as the other Investors, were upset with the way the money was being controlled. (MAA, ¶23-37). A short time thereafter, Mr. Arnold was contacted by counsel on behalf of the Investors requesting a meeting. As a result, a meeting was held on July 25th (the "first meeting"), wherein Mr. Arnold learned that Mr. Yoo had requested the meeting, but was not attending because he was upset with Mr. Arnold because money had been transferred into an interest bearing account. Ironically, counsel for the Investors had suggested in an earlier communication setting up the first meeting that those funds be transferred to an interest bearing account. (MAA, ¶29.)

At the first meeting, Mr. Arnold was threatened by Sophia Yoo that Mr. Yoo would take legal action against Dark Hall and Mr. Arnold if they did not agree to either return all of the Investor funds or give some of the spending control of the investment to Ms. Yoo. A few days later, on July 31st, counsel for the Investors demanded another meeting ("the second meeting") and indicated that Mr. Yoo was going to attend. (MAA, ¶32-33)

At the second meeting, Mr. Yoo appeared and in threatening Mr. Arnold with litigation, represented:

i   That he was authorized to act and speak for all of the Investors in "The Door";

i   That the Investors desired to begin production on "The Door" immediately, but at the reduced budget of $2 million dollars;

i   That $1,761,141.82 needed to be immediately returned to the Investors through Sophia Yoo;

i   That the remaining $1.945 million representing the new budget would be held in an account at Bank of America jointly controlled by Sophia Yoo and Mr. Arnold for which both of their authorizations and presence would be necessary for any withdrawals; and

i   That if Mr. Arnold and Dark Hall did not agree to the Investors demands, suit would be filed.

(MAA, ¶33-36).  Because Mr. Arnold did not want to litigate and because he believed he could still make the movie at the reduced budget, he agreed.  (MAA, ¶36-39).

As a result of this "agreement," Mr. Arnold went to the bank and had two checks issued.  The first check was written for approximately $1.76 million dollars to be returned to the Investors and was written to Sophia Yoo as instructed by Mr. Yoo.  (MAA, ¶39).  The second check was for $1.945 million and was written to Sophia Yoo and Mr. Arnold jointly so that they could take those funds and place them in an account at Bank of America, where they would be protected until everyone could agree as to the control that the Yoos would have in spending toward the movie.  The agreement with the parties and the bank, as shown by the notations/instructions /warnings placed on the account was that no withdrawals could be made without <u>both</u> Mr. Arnold and Sophia Yoo's presence or authorization.  (MAA, ¶40).

Dark Hall relied on Mr. Yoo's representations in agreeing to relinquish the $1.76 million dollars, as well as in placing the $1.945 million in a joint account.  The return of the $1.76 million dollars resulted in the Investors being in breach of their investor agreements due to the fact that they reduced the budget to less than half of what they agreed to fund the movie.

As it would turn out, however, none of Mr. Yoo's representations were true.  The $1.76 million dollars were never returned to the Investors by the Yoos and the Investors had no desire to begin production immediately with the $1.945 million because three weeks after the account was opened, the $1.945 million was stolen from the account by the Yoos.  (MAA, ¶40-44).

When it was discovered that the $1.945 million had been stolen from the Bank of America account, Mr. Arnold, on behalf of Dark Hall, filed suit against Mr. Yoo and Sophia Yoo in California Superior Court.  Because Mr. Yoo was effectively able to avoid service, he was eventually dismissed from the lawsuit without prejudice.  (See this Court's Order Denying Plaintiff's Motion to Dismiss Defendants' First Amended Counterclaim, **Docket No. 47**, filed 08/13/10 at p. 5, Fn 28.)  The California State Court, however, issued an injunction against the $1.945 million, which was in an account controlled by the Yoos.  As a result, when Dark Hall went to trial against Ms. Yoo and prevailed, these funds were eventually returned to Mr. Arnold.

In its verdict the State Court jury found against Sophia Yoo as follows:

i    That Sophia Yoo used a wrongful act or wrongful threat to pressure Mr. Arnold, on behalf of Dark Hall, into consenting to a contract (Verdict Form, attached to MAA **Attachment No. 9** at p. 5);

i    That Sophia Yoo made a false representation of an important fact to Mr. Arnold on behalf of Dark Hall (attached to MAA **Attachment No. 9** at p. 7);

i    That Sophia Yoo knew that the representation was false or made the representation recklessly and without regard for its truth (attached to MAA **Attachment No. 9** at p. 7);

i    That Sophia Yoo intended that Mr. Arnold, on behalf of Dark Hall Productions, would rely on the representation (attached to MAA **Attachment No. 9** at p.7);

i    That Mr. Arnold, on behalf of Dark Hall Productions, reasonably relied on the representation (attached to MAA **Attachment No. 9** at p. 8);

i    That Sophia Yoo, intentionally failed to disclose an important fact that Arnold, on behalf of Dark Hall, did not know and could not reasonably have discovered (attached to MAA **Attachment No. 9** p.10);

i    That Sophia Yoo intended to deceive Arnold, on behalf of Dark Hall, by concealing the fact (attached to MAA, **Attachment No. 9** at p.10);

i    That Mr. Arnold, on behalf of Dark Hall, relied on Sophia Yoo's deception and that his reliance was reasonable under the circumstances (attached to MAA **Attachment No. 9** at p. 11);

i    That Sophia Yoo's concealment was a substantial factor in causing harm to Dark Hall (attached to MAA **Attachment No. 9** at p. 11);

i    That Sophia Yoo did not intend to perform a promise made to Mr. Arnold on behalf of Dark Hall that was important to the transaction when she made it (attached to MAA, **Attachment No. 9** at p. 12);

7

i    That Mr. Arnold, on behalf of Dark Hall, reasonably relied on this promise (attached to MAA, **Attachment No. 9** p. 13);

i    That Sophia Yoo failed to perform the promised act (attached to MAA, **Attachment No. 9** at p. 13);

i    That Arnold/Dark Hall's reliance on Sophia Yoo's promise was a substantial factor in causing harm to Dark Hall (attached to MAA, **Attachment No. 9** p. 13);

i    That Sophia Yoo engaged in the conduct with malice, oppression or fraud (attached to MAA, **Attachment No. 9** at p. 18); and

i    That Dark Hall's damages totaled $3.7 million (attached to MAA, **Attachment No. 9** at p. 9).

As set forth below, because the Answer to the Counter-Claim was stricken, Mr. Yoo on behalf of himself and the similarly situated investors has failed to respond to the above allegations in the course of this litigation and accordingly the Clerk of the Court has entered a default.  Mr. Arnold and Dark Hall are therefore entitled to the entry of default judgment on their counterclaims.

## IV. <u>ARGUMENT</u>

### A.    <u>Matthew Arnold and Dark Hall are entitled to default judgment pursuant to Fed. R. Civ. P. 55</u>

This Court's order of May 20, 2011, dismissed Mr. Yoo's complaint for failure to plead or otherwise defend but the counterclaims were unaffected by that order.  **See Order to Dismiss, Document No. 87**.  In the course of denying Matthew Arnold and Dark Hall Productions' Motion for Summary Judgment on the counterclaims, this Court specifically advised the filing of a motion to strike Mr. Yoo's answer to the counterclaims with a subsequent motion for default judgment in the event that the motion to strike is granted.  **See Order Denying Defendants' Motion for Leave to File Motion for Summary Judgment, Document No. 92**.  Pursuant to this Courts advice, a motion to strike was filed on August 9, 2011 and granted on October 28, 2011.  See **Document No. 95**.  The Order granting the Motion directed the Clerk of the Court to strike

8

Yoo's Answer and enter his default on the counterclaims.

Under Fed. R. Civ. P. 55, "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."

As a result of Mr. Yoo's Answer having been stricken by the Court, the Clerk of the Court was order to enter the default of Mr. Yoo and the similarly situated investors.

Pursuant to Fed. R. Civ. P. 55(b), a court may order default judgment following the entry of default by the clerk of the court. PepsiCo, Inc. v. California Security Cans, 238 F.Supp.2d 1172, 1174 (2002) (citing, Kloepping v. Fireman's Fund, 1996 WL 75314, at *2 (N.D.Cal Feb. 13, 1996)). The relief sought here, an entry of default judgment is within the Court's discretion. Id., (citing, Draper v. Coombs, 792 F.2d 915, 924 – 25 (9th Cir. 1986)).

In Parker West International, LLC v. Clean Up America, Inc., 2009 WL 2916664 (N.D. Cal. Sept. 1, 2009) the United States District Court for the Northern District of California granted Parker West's motion for entry of default at a status conference and gave the defendant, CUA over a month to locate new counsel and have new counsel file an appearance, move to set aside the entry of default and oppose the motion for default judgment. The Court warned CUA that if it failed to do the above described action, then the Court would move forward with the motion for default judgment. CUA failed to take action as order and the court granted Parker West International's motion. Parker West International, LLC v. Clean Up America, Inc., at 1. Accordingly, default judgments can be warranted where a party refuses to participate. See also, Dr. JKL Ltd. v. HPC IT Education Center, 749 F. Supp. 2d 1038 (N.D. Cal. 2010) (motion for default granted for failure to respond regarding alternative dispute resolution or a case management conference and failure to appear).

The Ninth Circuit has laid out several factors which are to be considered in evaluating

9

whether to grant or deny a motion for default, which include but are not limited to:  "(1) the merits of plaintiff's substantive claim; (2) the sufficiency of the complaint; (3) the sum of money at stake in the action: (4) the possibility of prejudice to the plaintiff; (5) the possibility of dispute concerning material facts; (6) whether the default was due to excusable neglect;  and (7) the strong policy underlying Federal Rules of Civil Procedure favoring decisions on the merits." Eitel v. McCool, 782 F.2d 1470 (9th Cir. 1986).  The Eitel factors are addressed in turn below.

### 1.    Substantive Merits and Sufficiency of Complaint

The first two Eitel factors are the merits of the Plaintiffs' substantive claim and the deficiency of the Complaint.  Id., at 1471-72.  The Ninth Circuit in Kloepping, supra, (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)), has suggested that these factors require that a party state a claim in the complaint upon which the party may recover.  As will be shown below, Mr. Arnold and Dark Hall have asserted recoverable counterclaims sounding in fraud, conversion, breach of contract and unjust enrichment.

### a.    Fraud

In order to prevail on a fraud and deceit claim a party must prove: 1) a misrepresentation; 2) knowledge of its falsity; 3) intent to defraud; and 4) actual reliance by the Plaintiff.  Small v. Fritz Company, Inc., 30 Cal. 4th 167, 173 (2003).

The evidence is undisputed that Mr. Yoo, indicated that if the $1.76 million dollars was returned to Investors, then Dark Hall could immediately begin production of the movie at the $2 million dollar budget level.  Furthermore, it was represented that approximately $2 million dollars would be in a joint account controlled by Sophia Yoo and Mr. Arnold and could only be withdrawn if both were present.  The truth was the $1.76 million was never to be returned to the Investors and production could not immediately begin because the Yoos stole the money just three weeks after making those representations.  In addition, the $2 million dollars was withdrawn

10

contrary to the representations that the funds would remain in the account until Mr. Arnold and the Yoos agreed otherwise.  Mr. Arnold relied upon these representations in relinquishing control of the Dark Hall funds, in returning the $1.76 million dollars to Sophia Yoo and in placing the nearly $2 million in an account at Bank of America.  Furthermore, the Yoos never forwarded to Dark Hall the final $800,000 in funding it received on behalf of Dark Hall (see MAA at ¶18.)  As a result, it is undisputed that a fraud occurred here and Dark Hall is entitled to the full extent of its damages.

### b.      Conversion

In order to prevail on a claim for conversion, a party must prove: 1) their ownership or right to possession of property at the time of the conversion; 2) the conversion by wrongful act of another party or in this case the Counterclaim Defendant; and 3) damages.  <u>Baldwin v. Morena City Property, Inc.</u>, 79 Cal. App. 3d 393, 410 (1978).

The undisputed evidence is that Dark Hall received wires into its account of roughly $3.76 million dollars.  (See MAA at ¶17.)  Based upon misrepresentations made by Mr. Yoo, $1.76 million was relinquished to his daughter and then, despite the notations on the Bank of America account, another $1.945 million was wrongfully obtained. Neither Sophia Yoo nor Mr. Yoo had any right to any of these funds.  Moreover, the $800,000 provided to the Yoos by the fourth investor in order to invest in "The Door", was never forwarded to Dark Hall. As a result, it is undisputed that all of these funds were converted by the Yoos.

### c.      Breach of Contract Claims

In order to prevail for a claim for breach of contract, a party must prove 1) the existence of the contract; 2) his or her performance of the contract or a legally recognizable excuse for nonperformance; 3) the Counterclaim Defendants breach; and 4) resulting damage.  <u>First Commercial Mortgage Co. v. Reece</u>, 89 Cal. App. 4th 731, 745 (2001) (for an oral contract) and

11

1   Careau & Co. v. Security Pacific Business Credit, Inc., 222 Cal. 3d 1371, 1388 (1990) (for a

2   written contract).

3        In this case, there were three different agreements.  First, it was agreed between Dark Hall

4   and the Investors that they would fund the movie at $4.5 million dollars and that they had agreed

5   to the terms of the investor agreements provided to them.  (See MAA ¶10, 19.)  Although investor

6   agreements were never returned by the Yoos on behalf of any of the investors, one of them was

7   ultimately provided in a lawsuit by Boston Entertainment.  This investor agreement is attached to

8   MAA, **Exhibit A,** at **Attachment No. 2**.  Also attached to MAA, **Exhibit A** at **Attachment No. 2**

9   are the investor agreements which were agreed to by Mr. Yoo on behalf of Sae Kwang and agreed

10  to by KBN.  All of these investor agreements provide identical <u>full</u> indemnification for any

11  damages caused by the breach of the investor agreements by the Investors (**Exhibit C** of

12  **Attachment No. 2**, pg. 3).  In the investor agreements, the parties agree that the movie will be

13  funded at a $4.5 million dollar budget and each will invest the amount they wired in.  It is

14  undisputed that after the movie was fully funded, the Investors refused to allow Dark Hall to

15  make the movie at that budget and they effectively stole $1.76 million dollars they agreed they

16  would provide.  The $1.76 million dollars (and then later an additional $1.945 million) was never

17  returned.  Moreover, the Yoos failed to turn over the $800,000 from the final investors.  In not

18  funding the movie as agreed, the Investors each breached their respective Investor agreements.

19        The second agreement that was breached was the agreement by the Yoos on behalf of the

20  Investors to allow Dark Hall to immediately begin production of the movie at the $2 million

21  dollar budget.  Despite this agreement and within just a few weeks of making this agreement, the

22  Yoos on behalf of the Investors withdrew all of the approximately $2 million dollars thereby

23  preventing Mr. Arnold from making the movie.  As a result, the agreement was breached and

24  although Mr. Arnold ultimately regained control of the $1.945 million, he was without it for two

12

and a half years.  As such, Dark Hall is entitled to the interest as well as damages for the breach of that agreement.

The third agreement that was breached was the agreement by the Yoos to keep the $1.945 million dollars in the Bank of America account until Mr. Arnold and the Yoos could agree how to spend those funds on the movie.  This agreement is shown not just in Mr. Arnold's affidavit at paragraphs 23 through 29, but also in the "account notes" at the Bank of America branch (**MAA Exhibit A**, **Attachment 5**, pg. 3).  Therein it indicates that the parties will not withdraw any money without each other's presence.  In violation of this agreement, the Yoos withdrew all of the funds.  As a result, the agreement was breached and although Mr. Arnold ultimately regained control of the $1.945 million dollars, he was without it for two and a half years and is entitled to the interest thereon.

### d.    Unjust Enrichment

In order to prevail on a claim for unjust enrichment a party must prove 1) a receipt of a benefit; and 2) the unjust retention of the benefit at the expense of another.  LectroDryer v. Seoul Bank, 77 Cal. App. 4th 723, 726 (2000).

In this case, Dark Hall received $3.76 million dollars in funding and should have received an additional $800,000.  As a result of misrepresentations made by Mr. Yoo, Mr. Arnold returned approximately $1.76 million dollars to Mr. Yoo's daughter to return to the Investors.  It is undisputed that the money was never returned to Investors.  Moreover, the Yoos failed to turn over the $800,000 from the final investor.  As a result, Mr. Yoo has been unjustly enriched at the expense of Dark Hall.

### 2.    Amount at stake

Under the third Eitel factor, the Court must consider the amount of money at stake in relationship to the seriousness of Mr. Yoo's conduct.  In this action, Mr. Arnold and Dark Hall are

13

seeking monetary damages in the amount set forth in the Affidavit of Matt Arnold attached here as **Exhibit A.** The actual financial damage to Mr. Arnold and Dark Hall is liquidated, and is set forth in detail in his Affidavit, the key portions of which are summarized as follows:

As set forth in paragraph 53 of Mr. Arnold's Affidavit, $1,815,000.00 was never paid on the judgment entered against Sofia Yoo, plus interest. These findings represent the amount paid by investors which were obtained by the Yoos in violation of the contracts.[1]

In paragraph 54 of the Affidavit of Matthew Arnold, Mr. Arnold relays that in pursuing Ms. Yoo, the total amount of attorney's fees and expenses which he has incurred as a result of the actions which she conducted in concert with Mr. Yoo beginning from September 2007 up until August of 2010 when Mr. Arnold changed law firms was $942,457.46. Since that time, Dark Hall has paid an additional $21,002.69 in an effort to defend that matter on appeal as well as in pursuing Ms. Yoo in the bankruptcy she filed in an attempt to avoid the collection of these funds.

Paragraph 55 of the Affidavit of Matthew Arnold, relates that Mr. Arnold was forced to pursue Bank of America to attempt to recover the funds as a result of their failure to comply with the instructions that were placed on the account which required both the presence of Mr. Arnold and Ms. Yoo before any money could be withdrawn. The current amount of legal fees Dark Hall has incurred against Bank of America is $194,301.03.

In paragraph 56 of his Affidavit, Matthew Arnold indicates that he has incurred legal fees in the amount of $86,453.61 in this action. Recovery of these attorneys' fees is specifically authorized by the investor agreements, (attached to MAA, as attachment 2) which state:

> 18 <u>Attorneys' Fees</u>. If any legal action … is brought for the enforcement of this Agreement, or because of any dispute, alleged breach, default or misrepresentation in connection with this Agreement, the successful or prevailing party shall be entitled to recover reasonable attorney's fees and other costs that it incurred in that action …, in addition to any other relief to which it may be

---

[1] The itemized amounts are set forth in the chart attached as attachment 10 to the Affidavit of Matthew Arnold.

entitled.

Furthermore, in addition to the above cited contract language authorizing attorneys' fees, California law clearly supports recovery of attorneys' fees where, as here:

> [a] person who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover compensation for the reasonably necessary loss of time, attorney's fees, and other expenditures thereby suffered or incurred.

Electrical Electronic Control, Inc. v. Los Angeles United School Dist., 24 Cal. Rptr.3d 316, 327 (2005) (citing Prentice v. North Amer. Title Guar. Corp, (1963) 59 Cal.2d 618, 620 30 Cal. Rptr. 821, 381 P.2d 645).

As a result of Mr. Yoo's fraudulent and tortious conduct, as spelled out in the counterclaims here, Mr. Arnold and Dark Hall have been forced to pursue actions against third parties such as Bank of America and Sophia Yoo.

The total damages to Mr. Arnold and Dark Hall as itemized in his Affidavit at paragraphs 51 through 57 are $499.459.82.

### 3.     Possibility of Prejudice

Given that Mr. Yoo has demonstrated an unwillingness to cooperate with the American justice system on any level, it is highly likely that this is Dark Hall Production's one and only opportunity to obtain a judgment against Mr. Yoo.  This factor weighs in favor of granting the Motion.   See PepsiCo, Inc. v. California Security Cans., 238 F.Supp.2d 1172 (C.D.Cal.2002) ("potential prejudice Plaintiffs' favors granting a default judgment.  If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery.").

### 4.     Possibility of Dispute

The fifth Eitel factor considers the possibility of dispute as to any material facts in this case.  As noted in PepsiCo, upon entry of default all well-pleaded facts in the Complaint are taken as true, except those relating to damages.  PepsiCo, Inc. v. California Security Cans, at 1177)

15

(citing <u>TeleVideo Systems, Inc. v. Heidenthal</u>, 826 F.2d 915, 917-18 (9th Cir. 1987). With respect
to the damages, there is no dispute regarding the legal fees paid or the judgments entered against
Ms. Yoo in the prior state actions.[2]

### 5.   Possibility of Excusable Neglect

The sixth <u>Eitel</u> factor considers the possibility that the default resulted from excusable
neglect.  Given Mr. Yoo's initial participation in the matter and his subsequent abject refusal to
participate since then except to occasionally bring in new attorneys as old attorneys become
disenchanted and disillusioned with his refusal to do anything but game the system, this Court
must consider the possibility of excusable neglect to be vanishingly remote, if it exists as all.  As
the record in this case makes clear, the Court has provided more than ample opportunity for Mr.
Yoo to participate.  Instead, he has refused to communicate with any of his lawyers and he has
refused to show cause why the action should not be dismissed.  In short, any possibility of
excusable neglect is belied by the facts of the case.

### 6.   Policy for Deciding on the Merits

"Cases should be decided upon their merits whenever reasonably possible."  <u>PepsiCo</u> at
1177, (citing, <u>Eitel</u>, 782 F.2d at 1472).  Mr. Yoo's refusal to participate in the litigation makes the
possibility of any decision on the merits, impossible.  Under Fed. R. Civ. P. 55(a), termination of
a case before hearing the merits is allowed whenever a defendant fails to defend an action.
Thus, "the preference to decide cases on the merits does not preclude a court from granting
default judgment."  <u>Kloepping</u>, 1996 WL 75314, at *3.

---

[2] If this Court should require a hearing on those damages, Mr. Arnold and Dark Hall  stand ready, willing and able to
produce any and all documentation the Court might require in the form of evidence in support of the sworn statement
and affidavit of Mr. Arnold attached as **Exhibit A**.

16

1

## CONCLUSION

2

This motion for default judgment on the counterclaims in favor of Mr. Arnold and Dark

3

Hall Productions is warranted under Fed. R. Civ. P. 55 and should be granted in the amount of

4

$4,993,459.82 for the reasons set forth above.

5

DATED:  November 22, 2011                   Respectfully submitted,

6

7

8

                                  /s/ John D. Cox
                                  John D. Cox (pro hac vice admission)
9                                 LYNCH, COX, GILMAN & GOODMAN

10                                and

11                                Jason B. Cruz
                                  LAW OFFICES OF JASON B. CRUZ
12

13                                *Attorneys for Defendants and Counter-
                                  Claimants Dark Hall Productions, LLC and
                                  Matthew Arnold*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## PROOF OF SERVICE

2

### STATE OF CALIFORNIA, COUNTY OF SAN BERNARDINO

3

4

I, David Noel, state that at the time of service, I was over 18 years of age and not a party to this action.  My business address is 18 E. State Street, Ste 203-1, Redlands, CA 92373.

5

On November 22, 2011, I served true and correct copies of the following documents described as

6

7

**NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT; AND PROPOSED ORDER**

8

9

On the interested parties in this action as follows:

10

Yoon Chul Yoo                                   *Plaintiff and Counter-Defendant*
c/o Sophia Yoo

11

871 Crenshaw Blvd., #405
Los Angeles, CA 90005

12

Sophiay7@yahoo.com

13

**BY MAIL:**  I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices.  I am readily familiar with the Law Office of Jason B. Cruz' practice for collecting and processing correspondence for mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.  The document(s) were also sent via electronic transmission to the persons at the email address listed on the Service List.

14

15

16

17

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction this service was made.

18

19

Executed on November 22, 2011, at Redlands, California

20

*/s/ David Noel*_____

21

22

23

24

25

26

27

28

18