UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| YOON CHUL YOO,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>MATTHEW ARNOLD, an individual; DARK HALL PRODUCTIONS, LLC, a California limited liability company; and DOES 1-10, inclusive,<br><br>　　　　Defendants.<br><br>MATTHEW ARNOLD, an individual; DARK HALL PRODUCTIONS, LLC, a California limited liability company,<br><br>　　　　Counterclaimants,<br><br>　　vs.<br><br>YOON CHUL YOO, an individual; and DOES 1-10, inclusive,<br><br>　　　　Counterdefendants. | CASE NO. CV 09-07483 MMM (CWx)<br><br>ORDER DENYING MOTION TO SET ASIDE DEFAULT JUDGMENT |

Yoon Chul Yoo commenced this action against Matthew Arnold, Dark Hall Productions, LLC ("DHP"), and certain fictitious defendants on October 15, 2009.[1]  On October 29, 2009,

---

[1] Complaint, Docket No. 1 (October 15, 2009).

Arnold and DHP ("counterclaimants") filed a counterclaim against Yoo;[2] they amended the counterclaim on April 13, 2010.[3] Yoo answered the counterclaim on August 27, 2010.[4] On October 28, 2011, the court granted counterclaimants' motion to strike his answer due to his failure to oppose the motion and his refusal to participate in discovery.[5] That same day, the clerk entered Yoo's default on the counterclaim.[6] On July 31, 2012, Yoo filed a motion to set aside the default.[7] Counterclaimants oppose the motion.[8]

## I. BACKGROUND

### A. Facts Alleged in the Counterclaim

Counterclaimant Matthew Arnold is a Californian who is the sole owner and operator of DHP.[9] Arnold taught film at the New York Film Academy from December 2003 to March 2007.[10] In February 2007, he was approached by Yoo's daughter, Sun "Sophia" Yoo ("Sophia"), a student of his. Sophia said that Yoo was interested in raising money to finance the production

---

[2] Dark Hall and Matthew Arnold's Answer to Complaint and Counterclaim ("Answer"), Docket No. 5 (October 29, 2009).

[3] First Amended Counterclaim ("Counterclaim"), Docket No. 28 (April 13, 2010).

[4] Answer to Amended Counterclaim ("Counterclaim Answer"), Docket No. 51 (August 27, 2010).

[5] Order Granting Motion to Strike Counter-Defendants Answer to the Counterclaim, Docket No. 95 (Oct. 28, 2011).

[6] Default by Clerk Entered as to Counter Defendant Yoon Chul Yoo, Docket No. 97 (Oct. 28, 2011).

[7] Motion to set Aside Default Re: Clerks Entry of Default ("Motion"), Docket No. 101 (July 31, 2012).

[8] Opposition to Motion to Set Aside Default ("Opp."), Docket No. 104 (Sept. 24, 2012).

[9] Counterclaim, ¶ 17.

[10] *Id.*, ¶ 18.

of Arnold's original film, "The Door."[11] Sophia allegedly represented that she and her father intended to raise $4,500,000 by June 1, 2007, and convinced Arnold to visit Korea to meet with Yoo and other investors.[12] Arnold agreed, quit his teaching position, and met with various purported investors in Korea.[13] The investors allegedly agreed to finance production of "The Door" with a $4,500,000 budget in exchange for a share of the film's gross receipts.[14] Subsequently, Arnold formed DHP and opened a bank account in its name into which the investment proceeds could be deposited.[15] Deposits of $3,748,634.26 were subsequently made to the account on the investors' behalf.[16] Counterclaimants allege that a Japanese company invested an additional $980,000, but that those funds were deposited into accounts controlled by Sophia, rather than DHP's account.[17]

In June 2007, Sophia allegedly voiced concern about the split of revenue among the investors and her control of funds in the DHP bank account. Counterclaimants assert that she told Arnold the investors did not want to make a large profit on the film due to high tax exposure, and that she and Yoo would keep any additional profit.[18] In early July 2007, Sophia allegedly told Arnold that the investors were upset that she was not in control of all of the funds invested, and demanded that all funds be transferred to a bank account in Korea to make the investors more comfortable.[19] Counterclaimants contend that on July 25, 2007, Sophia and Yoo's attorney

---

[11]*Id.*, ¶ 21.

[12]*Id.*, ¶¶ 22, 24.

[13]*Id.*, ¶ 26.

[14]*Id.*, ¶ 29.

[15]*Id.*, ¶ 31.

[16]*Id.*, ¶¶ 34, 35.

[17]*Id.*, ¶¶ 35.

[18]*Id.*, ¶¶ 37, 38.

[19]*Id.*, ¶ 40.

requested a meeting with Arnold, at which they gave him three options: return the money, relinquish some spending control to Sophia and sign an agreement giving the investors more control over the film, or face a lawsuit filed by Sophia and Yoo.[20] Arnold agreed to give Sophia some spending control. The parties' respective attorneys were to work out the details of the new agreement.[21]

At a second meeting on July 31, 2007, Yoo, purporting to speak on behalf of the investors, allegedly reduced the budget for the film to $2,000,000.[22] Yoo allegedly demanded that the balance of the money be returned to investors via Sophia. Arnold immediately complied.[23]

Counterclaimaints assert that in reliance on Yoo's representations, Arnold returned $1,761,141.82 to the investors, opened a joint account with Sophia at Bank of America, and deposited $1,945,000 in that account for the production budget.[24] Soon thereafter, Yoo and Sophia disappeared.[25] Counterclaimants allege that the entire sum deposited into the Bank of America account was wired-transferred to bank accounts belonging to Sophia.[26] They assert that Sophia and Yoo conspired with each other to obtain the $1,945,000.[27] Counterclaimants allege that the money was not returned to investors, but was instead used to cover Sophia's companies and/or investments in other film projects.[28] They assert that the July meetings were a sham, and

---

[20]*Id.*, ¶ 42.

[21]*Id.*, ¶¶ 43, 44.

[22]*Id.*, ¶ 46.

[23]*Id.*, ¶¶ 47, 50.

[24]*Id.*, ¶ 50.

[25]*Id.*, ¶ 51.

[26]*Id.*, ¶¶ 58, 60.

[27]*Id.*, ¶ 84.

[28]*Id.*, ¶ 61.

that Yoo and Sophia conspired to use funds raised for "The Door" on unrelated film projects.[29]

In November 2007, in an action filed in state court, DHP obtained an injunction freezing the $1,945,000 taken without Arnold's authorization from the Bank of America account.[30] On October 15, 2009, a Los Angeles Superior Court jury returned a verdict in favor of counterclaimants and against Sophia Yoo on claims that were the same or similar to those raised in this case.[31] The jury awarded DHP $3,7000,000 for fraud and breach of contract, and $1,945,000 for conversion.[32]

### B. Procedural Background

As noted, Yoo commenced this action against counterclaimants on October 15, 2009, purportedly on his own behalf and on behalf of "similarly situated investors."[33] Also as noted, on October 29, 2009, counterclaimants filed an answer that included a counterclaim against Yoo.[34] Their amended counterclaim filed April 13, 2010, alleged claims against Yoo for fraud, conversion, breach of oral contract, promissory estoppel, breach of written contract, and unjust enrichment.[35] Yoo answered the counterclaim on August 27, 2010.[36]

Sometime in October 2009, Yoo's counsel was arrested and subsequently resigned from the State Bar.[37] On January 13, 2010, Baute & Tidus LLP (B&T) became Yoo's counsel of

---

[29] *Id.*, ¶ 52.

[30] *Id.*, ¶ 65.

[31] *Id.*, ¶ 1.

[32] *Id.*

[33] Complaint.

[34] Answer.

[35] Counterclaim at 1.

[36] Counterclaim Answer.

[37] Motion to Withdraw as Attorney ("B&T Motion"), Docket No. 49 (Aug. 26, 2010), Andrade Decl., ¶ 4.

5

record.[38] On August 26, 2010, B&T filed a motion to withdraw as counsel. In the motion, B&T asserted that Yoo had failed to pay fees and costs in accordance with a retainer agreement. The firm stated that it had sent Yoo monthly invoices and warned him via letter and email that it might withdraw if he failed to bring his account current. The motion stated that Yoo had not responded. B&T also asserted that Yoo did not respond to its communications and had made no effort to participate in the action.[39] On October 25, 2010, the court granted B&T's motion to withdraw.[40]

On November 22, 2010, Yoo sought leave to substitute Alan W. Forsley of Fredman Knupfer Lieberman LLP ("FKL") as his attorney;[41] the court granted this request on November 23, 2010.[42] On March 23, 2011, FKL filed a motion seeking to withdraw.[43] FKL represented that its retainer agreement with Yoo stated that, since Yoo lives in Korea and speaks only Korean, the firm was to communicate with him through Sophia. FKL asserted that it had made numerous attempts to have Yoo contact the firm, including through in-person requests to Sophia, but Yoo had not responded. In addition, FKL asserted that Yoo had failed to pay attorneys' fees and costs, even though it sent monthly invoices to Sophia and followed up with reminders. FKL reported that on February 25, 2011, Sophia told Forsley her father did not wish to respond to FKL's requests that he communicate with it and did not want to pay any more money to FKL. Yoo did

---

[38]Order on Request for Approval of Substitution of Attorney, Docket No. 11 (Jan. 13, 2010).

[39]B&T Motion at 3, 5.

[40]Order Granting Motion to Withdraw As Attorney, Docket No. 66 (Oct. 25, 2010).

[41]Request to Substitute Attorney Alan W. Forsley in Place of Attorney, Docket No. 69 (Nov. 22, 2010).

[42]Order on Request for Approval of Substitution of Attorney, Docket No. 70 (Nov. 23, 2010).

[43]*Ex Parte* Application of Fredman Knupfer Lieberman LLP to Withdraw as Attorney of Record, Docket No. 80 (March 23, 2011).

6

not oppose FKL's motion to withdraw, and the court granted the motion.[44]

On April 5, 2011, after Yoo had failed to communicate with or pay counsel or otherwise participate in the action for almost a year, the court issued an order to show cause why it should not dismiss the complaint with prejudice for failure to prosecute the action.[45] After Yoo failed to respond to the order to show cause, the court dismissed his claims against counterclaimants with prejudice on May 10, 2011.[46]

On July 20, 2011, counterclaimants filed a motion seeking leave to file a motion for summary judgment on their counterclaims against Yoo.[47] Given the procedural posture of the matter, the court denied the motion and directed counterclaimants to file a motion to strike Yoo's answer to the counterclaim.[48] They did so on August 9, 2011, citing Rule 37 of the Federal Rules of Civil Procedure.[49] After considering counterclaimants' arguments, Yoo's failure to oppose the motion, and Yoo's continued refusal to participate in discovery, the court struck Yoo's answer to the counterclaim, and directed the clerk to enter his default.[50] On October 28, 2011, the clerk entered default against "Yoon Chul Yoo, an individual, on behalf of himself and similarly situated

---

[44] Order Granting *Ex Parte* Application to Withdraw As Attorney of Record, Docket No. 85 (April 5, 2011).

[45] *Id.*

[46] Order Dismissing Action for Lack of Prosecution Without Prejudice, Docket No. 87 (May 10, 2011).

[47] Motion for Leave to File Notice of Motion for Leave to File Counterclaim Defendants' Motion for Summary Judgment, Docket No. 92 (July 20, 2011).

[48] Order Denying Defendants' Motion for Leave to File Motion for Summary Judgment, Docket No. 93 (July 20, 2011).

[49] Motion to Strike Counter Defendant's Answer to the Counterclaim, Docket No. 94 (Aug. 9, 2011).

[50] Order Granting Motion to Strike Counter-Defendant's Answer to the Counterclaim, Docket No. 95 (Oct. 28, 2011).

investors."[51]

On November 22, 2011, counterclaimants filed a motion for default judgment.[52] On February 13, 2012, the court took the motion under submission.[53] On September 24, 2012, Yoo filed a motion to set aside the default entered on October 28, 2011.

Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the court finds the matter appropriate for decision without oral argument and vacates the hearing scheduled for October 15, 2012.

## II. DISCUSSION

### A. Legal Standard Governing Motions to Set Aside Default

Under Rule 55 of the Federal Rules of Civil Procedure, "[t]he court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." FED.R.CIV.PROC. 55(c). Yoo argues there is "good cause" to set aside his default under Rule 55(c). Counterclaimants counter that Rule 55 was not the "sole basis" for the entry of default in this case, and that although Rule 55 "played a part in the Court's analysis," the court also entered default pursuant to Rules 37 and 41. They assert that analyzing the matter under Rule 55(c), "standing alone, is woefully inadequate to the task of justifying the setting aside of the default." Yoo does not respond to this argument.

It is clear that the clerk entered Yoo's default pursuant to Rule 55(a), although it is true that, as a predicate for the entry of default, the court struck Yoo's answer to the counterclaim pursuant to Rule 37. Counterclaimants, however, cite no authority for the proposition that Rule 55(c) does not apply to the entry of a default that follows the imposition of sanctions under Rule

---

[51] Default by Clerk Entered as to Counter Defendant Yoon Chul Yoo ("Default"), Docket No. 97 (Oct. 28, 2011).

[52] Motion for Default Judgment, Docket No. 96 (Nov. 22, 2011).

[53] Order Taking Motion for Entry of Default Judgment Under Submission and Off Calendar, Docket No. 98 (Feb. 8, 2012).

8

37 just as it does to the entry of other defaults. Indeed, the plain language of Rule 55(c) indicates that it is applicable to the entry of any default. Furthermore, counterclaimants identify no alternate legal standard the court should apply in evaluating Yoo's motion to set aside the default. Consequently, the court will apply Rule 55(c)'s "good cause" standard in deciding this motion.

To determine whether there is good cause to set aside a party's default under Rule 55(c), "a court must 'consider[ ] three factors: (1) whether [the party seeking to set aside the default] engaged in culpable conduct that led to the default; (2) whether [he] had [no] meritorious defense; or (3) whether reopening the default . . . would prejudice' the other party." *United States v. Signed Personal Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010) (quoting *Franchise Holding II v. Huntington Rests. Group, Inc.*, 375 F.3d 922, 925-26 (9th Cir. 2004) (most alterations original)). "This standard, which is the same as is used to determine whether a default judgment should be set aside under Rule 60(b), is disjunctive, such that a finding that any one of these factors is true is sufficient reason for the district court to refuse to set aside the default." *Id*.

The burden is on Yoo to show that relief from default is justified. See *Franchise Holding II*, 375 F.3d at 926 (holding that the party seeking to set aside the default "bore the burden of showing that any of [the three relevant] factors favored setting aside the default," citing *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 697 (9th Cir. 2001)).

District courts have broad discretion in granting or denying a motion to set aside the entry of default under Rule 55(c). See *United States v. Brady*, 211 F.3d 499, 504 (9th Cir. 2000) ("[A] district court's discretion is 'especially broad' when . . . 'it is entry of default that is being set aside, rather than a default judgment,'" quoting *O'Connor v. Nevada*, 27 F.3d 357, 364 (9th Cir. 1994)); see also *Hawaii Carpenters' Trust Funds v. Stone*, 794 F.2d 508, 513 (9th Cir. 1986) ("The different treatment of default entry and judgment by Rule 55(c) frees a court considering a motion to set aside a default entry from the restraint of Rule 60(b) and entrusts [the] determination to the discretion of the court"); *Mendoza v. Wright Vineyard Mgmt.*, 783 F.2d 941, 945 (9th Cir. 1986) ("The court's discretion is especially broad where . . . it is entry of default that is being set aside, rather than a default judgment"). In exercising that discretion, however,

the court must take into account the Ninth Circuit's preference for having cases decided on the merits.  See *Mesle*, 615 F.3d at 1091 ("judgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits," citing *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984), *Latshaw v. Trainer Wortham & Co., Inc.*, 452 F.3d 1097, 1103 (9th Cir. 2006), *Speiser, Krause & Madole P.C. v. Ortiz*, 271 F.3d 884, 890 (9th Cir. 2001), and *TCI Group Life Ins. Plan*, 244 F.3d at 695-96).

### B. Whether There Is "Good Cause" to Set Aside Yoo's Default

#### 1. Whether Yoo Has a Meritorious Defense

"A defendant seeking to vacate a default judgment must present specific facts that would constitute a defense." *TCI Group Life Ins. Plan*, 244 F.3d at 700 (citing *Madsen v. Bumb*, 419 F.2d 4, 6 (9th Cir. 1969)).  "[T]he burden on a party seeking to vacate a default judgment is not extraordinarily heavy." *Id.* (citing *In re Stone*, 588 F.2d 1316, 1319 n. 2 (10th Cir. 1978)).  "All that is necessary to satisfy the 'meritorious defense' requirement is to allege sufficient facts that, if true, would constitute a defense." *Mesle*, 615 F.3d at 1094; see also *Falk*, 739 F.2d at 463 (allegation that a landlord had repeatedly accepted late rental payments was sufficient to raise a meritorious defense of waiver in an unlawful detainer action).  The court is not to determine whether the factual allegations underlying the defense are true in deciding a motion to set aside default; that question is more properly the "subject of . . . later litigation." *Mesle*, 615 F.3d at 1094 (citing *TCI Group Life Ins. Plan*, 244 F.3d at 700).

Yoo contends he has several meritorious defenses to the counterclaim.  Counterclaimants do not specifically respond to Yoo's arguments concerning meritorious defenses.  Instead, they argue generally that Yoo has not adduced sufficient evidence to show that he has meritorious defenses.  Counterclaimants' arguments concerning the insufficiency of Yoo's evidence are not relevant because, as noted, Yoo need simply make factual allegations to raise a meritorious defense.  He need not show he can prove them.  *Id*.

One defense that Yoo asserts is that counterclaimants cannot recover attorneys' fees because there is no statute that provides for fee-shifting in this case.  Contrary to his assertion, California Civil Code § 1717 provides that

10

> "[i]n any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs." CAL. CIV. CODE § 1717(a).

The investment agreement that is the basis for counterclaimants' breach of written contract claim states: "If any legal action . . . is brought for the enforcement of this Agreement, or because of any dispute . . . in connection with this Agreement, the successful or prevailing party shall be entitled to recover reasonable attorney's fees and other costs . . . ."[54] As a result, the court can award DHP reasonable attorneys' fees and costs incurred in attempting to enforce the investment agreement. Consequently, Yoo's argument concerning the unavailability of attorneys' fees does not constitute a "meritorious defense."

Yoo advances as a second defense the fact that he cannot be held liable for breach of an oral contract to invest $4.5 million in the production of "The Door." Yoo asserts he was not a party to any such agreement, and contends that counterclaimants have failed to allege he was. Yoo is correct that the counterclaim does not specifically allege that Yoo entered into an oral agreement with DHP, although it does assert generally that "Counter-Defendants, and the investors they represented, agreed to . . . invest[ ] $4,500,000."[55] The counterclaim also alleges that in June 2007, Sophia voiced concern about the split of revenue between the investors, Yoo, and herself.[56] Counterclaimants further allege that Sophia told Arnold that the investors did not need to make a large profit from the film due to high tax exposure and that she and Yoo would

---

[54] Counterclaim, Exh. 4, at 6.

[55] *Id.*, ¶ 89.

[56] *Id.*, ¶ 37.

11

keep any additional profit.[57]  These allegations suggest that Sophia and Yoo were parties to the investment agreement. Yoo clearly disputes that he was an investor and that he personally contracted to invest in "The Door." If he is able to prove such an allegation, this would relieve him of any personal liability for breach of an alleged oral contract. See *Am. Steel & Stairways, Inc. v. Lexington Ins. Co.*, No. C 12-3103, 2012 W L4097711, *2 (N.D. Cal. Sept. 17, 2012) ("Under California law, claims for breach of contract . . . require the existence of a contract between a plaintiff and the defendant," citing *Gruenberg v. Aetna Ins. Co.*, 9 Cal.3d 566, 576 (1973), and *Minnesota Mut. Life Ins. Co. v. Ensley*, 174 F.3d 977, 981 (9th Cir. 1999)). The court therefore concludes that Yoo has met his burden of alleging facts that, if true, would constitute a meritorious defense to the breach of oral contract claim.

Yoo also asserts that even if counterclaimants can prove that he was a party to the oral contract, and breached it, they cannot recover $4.5 million in damages from him. He contends that the damages sought in the counterclaim exceed the amount necessary to place counterclaimants in the position they would have been in had the alleged breach not occurred. Specifically, he asserts that counterclaimants have already recovered $1,945,000 of the $4.5 million that was purportedly promised to them, and cannot recover that sum again. He also contends that counterclaimants agreed to modify the investment agreement on July 31, 2007, and reduce the investors' commitment to $2 million. If either or both of these allegations is true, the outstanding amounts due counterclaimants under the investment agreement is less than the $4.5 million in damages they claim. Thus, Yoo's allegations regarding the amount of damages, if true, also constitute a meritorious defense. *Choice Hotels Int'l, Inc. v. Kusum Vali, Inc.*, No. 11cv1277, 2012 WL 1570844, *4 (S.D. Cal. May 3, 2012) (setting aside a default where "[d]efendants . . . alleged sufficient facts to support a potentially meritorious defense regarding the amount of damages").

### 2. Whether Reopening the Default Would Prejudice Counterclaimants

The standard for determining whether a plaintiff will be prejudiced if a defendant's default

---

[57] *Id.*, ¶ 38.

12

is set aside is whether its ability to pursue its claims will be hindered. *Falk*, 739 F.2d at 463; see also *Ferrand v. Wisconsin Equine Management Servs., Inc.*, No. C 94-1059 SC, 1995 WL 274366, *3 (N.D. Cal. May 5, 1995) ("[A] motion to set aside default will be denied if plaintiff can show prejudice, such as the delay will result in loss of evidence, increase the difficulty of discovery, or thwart plaintiff's ability to obtain relief"). Delay alone does not constitute prejudice unless it will "result in tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion." *TCI Group Life Ins. Plan*, 244 F.3d at 701 (quoting *Thompson v. Am. Home Assurance Co.*, 95 F.3d 429, 433-34 (6th Cir. 1996)). Assertions that a victory obtained through an opponent's procedural default will be lost, or that the action will have to be litigated on the merits, also do not demonstrate prejudice. *Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1225 (9th Cir. 2000).

Yoo argues that counterclaimants will not be prejudiced if his default is set aside. He asserts that the only adverse impact they will suffer is that they will be required to prove their claims and damages. Counterclaimants do not identify any reason why their ability to pursue their claims would be hindered if the court set aside Yoo's default, and the court can perceive none. As noted, delay alone does not constitute prejudice. Consequently, this factor does not constitute a basis for denying Yoo's motion to set aside the default.

### 3. Whether Yoo Engaged in Culpable Conduct That Led to the Default

A defendant's conduct is culpable if he received actual or constructive notice of the action and intentionally failed to answer or otherwise respond. See *TCI Group Life Ins. Plan*, 244 F.3d at 697-98; *Meadows v. Dominican Republic*, 817 F.2d 517, 521 (9th Cir. 1987). A defendant "intentionally" fails to respond when his conduct is "wilful, deliberate or [in] bad faith." *TCI Group Life Ins. Plan*, 244 F.3d at 697 (quoting *Am. Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996)).

Yoo argues that he did not engage in culpable conduct leading to the entry of his default. He contends that the default was entered because he was without counsel, because he was unfamiliar with American legal process, and because he does not understand English. Yoo also asserts that his conduct was not culpable because he did not authorize the filing of this action, and

13

the attorney who filed it on his behalf was arrested days later for forging a court order in another case. Counterclaimants counter that Yoo has failed to adduce evidence showing that his assertions that he does not speak English and that the action was initiated without his consent are true.

Even assuming the truth of Yoo's unsupported assertions, he fails to offer an "explanation for the default [that is] inconsistent with a devious, deliberate, willful, or bad faith failure to respond." *TCI Group Life Ins. Plan,* 244 F.3d at 697. Although Yoo contends he did not authorize his original lawyer to file the action, he does not explain why, when that lawyer was disbarred, he hired new lawyers to represent him in the action instead of voluntarily dismissing the suit, or seeking a stipulation dismissing both claims and counterclaims. Although Yoo contends that language barriers prevented him from communicating with counsel, he does not explain why he and counsel could not communicated through an interpreter or through his daughter Sophia. As noted, in the retainer agreement he signed with one of his subsequent lawyers, he required that all communication go through Sophia.[58] Finally, the alleged language barrier does not explain why Yoo refused to pay both sets of attorneys he retained. As reflected in its orders permitting B&T and FLK to withdraw as counsel, the court finds that Yoo's culpable conduct led to his attorneys' withdrawal. Nor can Yoo cite his lack of counsel as an excuse for failure to participate in the case, including the discovery process, when his attorneys withdrew because he refused to pay fees and communicate with them.

Yoo clearly knew the case was ongoing, as he had previously retained counsel to represent him in it. Nonetheless, he was completely unresponsive to the court's orders and counterclaimants' motions for more than a year. The court can discern no justification for such conduct. After FLK withdrew, Yoo did not obtain new substitute counsel until July 20, 2012. He provides no explanation as to why it took so long for him to retain new counsel. Nor does he explain why he waited nearly a year to file this motion to set aside default. See *Mood v. Global Diamond Resources*, 125 Fed. Appx. 113, 114 (9th Cir. Feb. 17, 2005) (Unpub. Disp.) (holding

---

[58]Indeed, the evidence Yoo cites demonstrates that he was able to conduct meetings with Arnold using Sophia as a Korean translator. (Reply at 6 (citing Declaration of Eric R. Maier re Motion to Set Aside Default, Docket No. 102 (July 13, 2012), Exh. B at 4)).

that the district court reasonably concluded that defendant had engaged in culpable conduct that led to the default, where defendant waited more than six months to file a motion to set aside the entry of default); *United States v. Scharringhausen*, 226 F.R.D. 406, 410 (S.D. Cal. 2005) (finding that a default had resulted from defendant's general pattern of culpable conduct, where he waited over eleven months after the entry of default judgment to file a motion to set aside the judgment). In short, Yoo has provided no reasonable explanation or excuse for his continuous pattern of inaction.

Because Yoo's conduct led to the default, and because he fails to provide a "credible, good faith explanation" excusing his conduct, the court concludes that the default resulted from his culpable conduct. *TCI Group Life Ins. Plan,* 244 F.3d at 697. The court can deny Yoo's motion to set aside his default on this ground alone. See *Franchise Holding II*, 375 F.3d at 926 (holding that the district court is free to deny relief if any of the three *Falk* factors is true); see also *Brandt v. Am. Bankers Ins. Co. of Florida*, 653 F.3d 1108, 1112 (9th Cir. 2011) (a district court "may exercise its discretion to deny relief to a defaulting defendant based solely upon a finding of defendant's culpability. . ."); *BMW Fin. Serv., N.A., LLC v. Friedman & Wexler, LLC*, No. C 09-04498, 2010 WL 668292 (N.D. Cal. Feb. 24, 2010) ("where the default was the result of the defendant's culpable conduct, a district court may refuse to set aside the default on that basis alone," citing *Alan Neuman Prod. Inc. v. Albright,* 872 F.2d 1388 (9th Cir. 1988)). Yoo's culpable conduct has been extreme; he has shown a pattern of willful and deliberate failure to respond over the course of multiple years, which has caused unnecessary delay and expense. Consequently, the court denies Yoo's motion to set aside the default.

**C.    Whether Absent Parties' Default Was Entered**

In his reply, Yoo argues that his default should be set aside because default was entered against an uncertified class of absent defendants.[59] Yoo's complaint did not purport to plead a class action. It did not allege the definition of any class, nor state that Yoo sought to represent that class as its named representative. While the complaint asserted that he held a power for

---

[59]Reply at 1-4.

attorney that allowed him to represent the other investors, this is insufficient to invoke class action procedures.[60] Because no class action complaint was filed, the court never set a date by which a motion for class certification had to be heard. Nor did it designate Yoo a class representative. Although, as noted, Yoo alleged that he represented the interests of other investors, none of these investors has ever been a party to this suit. Counterclaimants did not serve their counterclaim on any party other than Yoo. As a consequence, jurisdiction over these parties never attached. Stated differently, the interests of absent investors do not constitute "good cause" to set aside Yoo's default because the default was entered against Yoo alone.[61]

### III.  CONCLUSION

For the foregoing reasons, the motion to set aside the default is denied.

DATED: October 10, 2012

MARGARET M. MORROW
UNITED STATES DISTRICT JUDGE

---

[60]Complaint, ¶ 5.

[61]Counterclaimants suggest that Rule 11 sanctions are appropriate, based on purported misrepresentations Yoo and/or his counsel have made about Yoo's ability to represent the absent investors. (Opp. at 19-22). If counterclaimants wish to move for Rule 11 sanctions, they must file a motion in accordance with the applicable rules. See FED.R.CIV.PROC. 11(c)(2). Even if such a motion were filed, however, the court would decline to award sanctions.